TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING










NO. 03-97-00750-CR







Gregory Chris Angelo, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 47,376, HONORABLE RICK MORRIS, JUDGE PRESIDING








 To address concerns raised in the motion for rehearing, we withdraw our earlier
opinion and judgment issued August 13, 1998, and substitute this one in its place. Appellant
Gregory Chris Angelo appeals from a jury conviction of capital murder. See Tex. Penal Code
Ann. § 19.03(a)(2) (West 1994). The court assessed a mandatory life sentence. See id. § 12.31
(West 1994). In this appeal, appellant complains that the evidence was insufficient to sustain the
conviction, that the trial court erred in admitting certain evidence, and that the trial court erred
in failing to submit certain issues to the jury. We will affirm the trial court's judgment.


BACKGROUND

 At the time of the incident, Gregory and Cynthia Angelo were legally married;
however, they were living separately. Cynthia and their two children remained in the family home
on Antelope Trail; appellant moved to a nearby apartment at Wildwood Apartments. In February
1997, Cynthia hired an attorney to help her divorce her husband. The divorce was filed February
27 and appellant was served on March 10. A hearing on temporary matters was set for March 14.

 On March 13 around midday, Gregory took a cab to his estranged wife's home on
Antelope Trail. Carrying a basket full of clothes, he allegedly told the cab driver that he was
going to his ex-wife's home to do laundry. Appellant asked the driver to stop at a driveway two
houses away from his wife's. He then entered the house through the garage by using the garage
door remote control. On the same day, Cynthia left her work at 12:40 p.m. to go home for lunch. 
At 1:18 p.m., a Temple Police Department dispatcher received a 911 call from a man who was
screaming unintelligibly; the dispatcher was only able to hear, "My wife. My wife. Help me." 
The computer screen revealed that the call was coming from Cynthia Angelo's address on
Antelope Trail. When a paramedic arrived at Cynthia's home two to three minutes after the 911
call was made, he found the front door locked and entered through a window. He saw appellant
lying on the kitchen floor face down and next to Cynthia who was also lying down. She was
bleeding profusely from her face and the paramedic was unable to find a pulse. Appellant was
sobbing and moaning although no injuries to his body were apparent. A handgun was found on
the floor next to appellant. Cynthia had been shot in the chest and had a number of blunt-force
injuries, bruises, and scrapes on her face and head. The medical examiner testified that such
injuries could have been caused by a fist or pistol butt; they were not, however, the result of a
single fall.

 Temple Police Detective Wayne Corley examined the crime scene. He testified that
there appeared to have been a fight, and that there were several spots of blood in the bathroom
which was adjacent to the master bedroom. Knowing that the Angelos had children, Detective
Corley searched the house. In the master bedroom, he noticed some papers on a dresser. 
Thinking the papers might be related to the murder, Detective Corley turned them over and
realized they were suicide-murder notes.

 Appellant Gregory Angelo was charged with the offense of capital murder by an
indictment alleging that he had caused the death of Cynthia Angelo while in the course of
committing or attempting to commit retaliation or while in the course of committing or attempting
to commit kidnaping. The State did not seek the death penalty. The jury found Gregory guilty
of capital murder as charged in the indictment and the trial court assessed a mandatory life
sentence in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed
a motion for new trial that was overruled by operation of law. He appeals his conviction
complaining of legal and factual sufficiency, admissibility of evidence, and the trial court's failure
to instruct the jury on certain issues.


DISCUSSION

Legal and Factual Sufficiency

 In issues one and two, Gregory claims the evidence was legally and factually
insufficient to support his conviction of capital murder. (1)

 We address first whether there was sufficient evidence to support the finding that
appellant caused the death of his wife while in the course of committing retaliation. A person
commits a capital murder if he commits a murder as defined under section 19.02(b)(1) (2) in the
course of committing or attempting to commit retaliation. Tex. Penal Code Ann. § 19.03(a)(2). 
A person commits the offense of retaliation if he intentionally or knowingly harms or threatens
to harm another by an unlawful act in retaliation for or on account of the service of another as a
public servant, witness, prospective witness, informant, or a person who has reported or who the
actor knows intends to report the occurrence of a crime. Id. § 36.06(a)(1) (West 1994).

 The critical inquiry on review of the legal sufficiency of the evidence to support a
criminal conviction is whether the record evidence could reasonably support a finding of guilt
beyond a reasonable doubt. This Court does not ask whether it believes that the evidence at trial
established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 

443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). 
The standard of review is the same for both direct and circumstantial evidence. See Chambers v.
State, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986).

 The State presented evidence that Cynthia had filed a divorce action against
appellant and that a hearing regarding the divorce was scheduled for March 14. Cynthia was shot
and killed the day before the scheduled hearing. There was evidence that Gregory was found at
the scene lying next to his wife's body and that the handgun used to kill Cynthia was lying next
to him. Gregory admitted that he was holding the handgun when it fired the bullet that struck
Cynthia. The State put in evidence the suicide-murder notes found at the victim's home that were
addressed to various family members and signed by Gregory to show that Gregory killed his wife
because she filed a divorce action against him. Excerpts from the notes reveal the following: 
"Your Mom decided to give up trying to make our family a good one. Mom decided to file a
divorce of marriage with Daddy and our children. She decided it was not worth trying again
anymore." "Cyndy left us no choice what so ever." Appellant testified that on March 13 he went
to his wife's home, that they discussed the pending divorce, that they engaged in a heated
argument, and that Cynthia asked him to put the gun down. There is no dispute that Cynthia was
a prospective witness in the divorce action against Gregory. Viewing the foregoing evidence in
the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt
that Gregory killed his wife because she filed a divorce and was a prospective witness against him. 
We hold the evidence is legally sufficient to support the verdict.

 When the court of appeals conducts a factual-sufficiency review, the court views
all the evidence equally, including the testimony of defense witnesses and the existence of alternate
hypotheses. The court should set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922 S.W.2d 126,
135 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet.
ref'd untimely filed).

 Appellant testified that he went to his wife's home to kill himself. He stated that
he wrote the suicide-murder notes and that he was going then to kill himself but that Cynthia came
home. They began a conversation that "gave him hope the marriage could be salvaged," and
Gregory testified he then changed his mind about killing himself. Gregory admitted the
conversation degenerated into in an argument. He testified that Cynthia picked up some scissors
and that he asked her to put them away. At the time, appellant was carrying a handgun in his
waistband and Cynthia asked him to get rid of the gun or unload it. Gregory testified that he
began unloading the gun while following Cynthia out of the master bedroom toward the kitchen,
that the gun "exploded," and that a bullet struck his wife. He stated he did not remember anything
else until he woke up in the hospital. Appellant admitted that he knew his wife had filed for a
divorce and that she was a prospective witness.

 The jury is the exclusive judge of the credibility of the witnesses and the weight to
be given their testimony, and may accept or reject all or any part of the evidence. See Miller v.
State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.). The fact-finder may draw
reasonable inferences and reasonable deductions from the evidence. Id. Although Gregory
testified that he went to his wife's home to kill himself, there was evidence contradicting
Gregory's purported motive. The cab driver who took Gregory testified that Gregory was
carrying a laundry basket and that he stated he was going to do his laundry at his ex-wife's home. 
Furthermore, none of the notes Gregory wrote before he intended to kill himself were addressed
to his wife. Due to the conflicting testimony surrounding Gregory's reasons for going to his
wife's home, the jury could have reasonably found that he went to her home with the purpose of
killing her.

 Appellant contends that although Cynthia was a prospective witness there was
insufficient evidence to support finding that he killed her because of her status as such. See In re
M.M.R., 932 S.W.2d 112, 115 (Tex. App.--El Paso 1996, no writ) (section 36.06(a)(1) contains
retributory element). We agree that a plain reading of the statute requires the crime to have a
retributory nature. See Tex. Penal Code Ann. § 36.06 ("in retaliation for or on account of"). 
However, the evidence in this case supports a finding that the murder was retributory in nature. 
Cynthia had filed a divorce action and was a prospective witness against appellant. Gregory killed
his wife the day before the divorce hearing was scheduled. Furthermore, the notes were
circumstantial evidence that Gregory was greatly upset that Cynthia was "divorcing the family"
and that he planned to kill her in order to stop the divorce proceeding in which she was a
prospective witness. In Davis v. State, the court found the evidence sufficient to support a finding
of retaliation when the defendant threatened the social worker who was assigned to the case
involving a termination of the defendant's parental rights to his child. 890 S.W.2d 489, 491-92
(Tex. App.--Eastland 1994, no pet.). The court noted that the defendant was aware the social
worker would be instigating the termination proceedings and would be a witness against him. Id.
at 492; see also Johnston v. State, 917 S.W.2d 135, 137-38 (Tex. App.--Fort Worth 1996, pet.
ref'd) (person became prospective witness for purposes of retaliation statute when he called
defendant's parole officer to report threat defendant had made). Gregory does not mention a
single case of similar circumstances in which the evidence was not sufficient, and we find none. 
We hold the evidence is both legally and factually sufficient to support the finding that appellant
murdered his wife on account of her role as a prospective witness in the divorce suit against him. 

 Because we conclude that a finding of retaliation is sufficient to uphold the
judgment finding appellant guilty of capital murder, we need not address whether he committed
or attempted to commit a kidnaping in the course of his crime. We overrule issues one and two.


Search and Seizure

 Gregory complains in his third issue that the trial court erred in admitting certain
evidence seized in violation of the federal and state constitutions and the Texas Code of Criminal
Procedure. See U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art.
38.23(a) (West Supp. 1998). (3) In a hearing outside the jury's presence, the State offered in
evidence Gregory's handwritten notes that Detective Corley had found in the master bedroom of
Cynthia's home. Although conceding that the police had a lawful right to be in the room,
appellant nonetheless objected on the basis that the notes had been obtained in a warrantless
search. The State claimed that Gregory had no standing to challenge the admission of the notes
because he had no expectation of privacy in the home where the notes were found and no
expectation of privacy in the notes themselves. The trial court overruled appellant's objection.

 The purpose of both the Fourth Amendment and Article I, section 9 is to "safeguard
an individual's legitimate expectation of privacy from unreasonable governmental intrusions." 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (quoting Richardson v. State,
865 S.W.2d 944, 948 (Tex. Crim. App. 1993)). An accused has standing to challenge the
admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation
of privacy in the place invaded. Id. The accused carries the burden of proving he had a legitimate
expectation of privacy. Id. To carry this burden, the defendant must prove that by his conduct,
he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve
something as private, and that circumstances existed under which society was prepared to
recognize his subjective expectation as objectively reasonable. Id. (citing Smith v. Maryland, 442
U.S. 735 (1979)). The Texas Court of Criminal Appeals has held the following relevant to the
court's determination of whether the defendant's subjective expectation was one that society was
prepared to recognize as objectively reasonable: (1) whether the accused had a property interest
or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded;
(3) whether he had complete dominion or control and the right to exclude others; (4) whether,
before the intrusion, he took normal precautions customarily taken by those seeking privacy;
(5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent
with historical notions of privacy. Id.

 An appellate court must view the record evidence and all reasonable inferences
therefrom in the light most favorable to the trial court's ruling. See Hunter v. State, 955 S.W.2d
102, 107 (Tex. Crim. App. 1997). We must sustain the trial court's ruling if it is reasonably
supported by the record and is correct on any theory of law applicable to the case. See id.

 Though Gregory owned the house in which Cynthia lived, all other evidence reveals
he had no expectation of privacy in that home in light of the Villarreal factors. Appellant admits
that he agreed to let his wife have possession of the home during the pendency of the divorce. In
fact, appellant had been living at Wildwood Apartments for several weeks. See Villegas v. State,
791 S.W.2d 226, 235 (Tex. App.--Corpus Christi 1990, pet. ref'd) (defendant lacked standing
when he had not stayed nor been welcome at his aunt's residence for some time and was residing
with his mother). Most notable is the evidence that Cynthia changed the locks to the home more
than once to keep her husband out, and on the day of the murder appellant entered the home by
using the garage door remote control rather than enter through the front door. This indicates that
Gregory was neither "legitimately in the place invaded" nor did he have complete dominion or
control over the home. See Villarreal, 935 S.W.2d at 139 (defendant who had no intention to stay
overnight nor unrestricted access to home searched by police lacked standing); Villegas, 791
S.W.2d at 235-36 (noting that defendant did not enter home through front door but by window);
see also Black v. State, 776 S.W.2d 700, 701 (Tex. App.--Dallas 1989, pet. ref'd) (defendant who
was, at best, a guest in home searched had no standing). Gregory does not contend that he was
invited by Cynthia to her home or that he was welcome there; the evidence indicates otherwise. 
Without deciding whether by his conduct Gregory exhibited a subjective expectation of privacy,
we determine that society would not sanction as objectively reasonable an expectation of privacy
of someone who was in a home under the circumstances presented. See Villarreal, 935 S.W.2d
at 139.

 Appellant contends he had a legitimate expectation of privacy in his handwritten
notes. However, to have standing, one must have an expectation of privacy in the premises or in
the item seized at the time of search and seizure. See Villegas, 791 S.W.2d at 236 (citing
Villarreal v. State, 708 S.W.2d 845, 849-50 (Tex. Crim. App. 1986)). Appellant himself called
911, which he knew would bring police officers who might investigate the scene. When Detective
Corley arrived at the scene, he found overturned furniture and blood on the bathroom floor and
the doorframe of the victim's bedroom. Corley found the handwritten notes on a dresser in the
bedroom. They were addressed to various family members. See Martinez v. State, 880 S.W.2d
72, 76 (Tex. App.--Texarkana 1994, no pet.) (no legitimate expectation of privacy in information
one turns over to third parties) (citing California v. Greenwood, 486 U.S. 35, 41 (1988)). "What
a person knowingly exposes to the public, even in his own home or office, is not a subject of
Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351 (1967).

 Because Gregory did not have a legitimate expectation of privacy in his wife's home
or the notes, we hold he did not have standing to challenge the admission of the notes in evidence.

 Even if appellant did have standing and the trial court erred in admitting the notes,
we find that Gregory waived such error by testifying to the notes in his case in defense. See Jones
v. State, 843 S.W.2d 487, 493 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1035 (1993). In
an attempt to raise a mental health defense, appellant's brother, a physician, testified that the notes
were evidence of appellant's unsound mind. Gregory himself testified on direct examination that
he wrote the notes because he was going to kill himself. Finally, in closing argument, defense
counsel contended that the notes were evidence that appellant was deeply depressed. On the
foregoing testimony, appellant waived any error. We overrule issue three.

 In his fourth issue, Gregory claims the trial court erred by allowing in evidence 
items the police seized from his residence at Wildwood Apartments in violation of the federal and
state constitutions and the Texas Code of Criminal Procedure. See U.S. Const. amend. IV; Tex.
Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23(a). Appellant specifically complains
of the trial court's failure to exclude a photograph the police took at his apartment depicting a bag
full of his wife's clothing. We find that appellant failed to preserve any error by not objecting in
a timely fashion to the introduction of such evidence on the grounds asserted on appeal. The
following is an excerpt from the State's cross-examination of Gregory:


Q: You took belongings of hers, clothes, shoes, jewelry from that house to torment
her; didn't you?


A: No, sir.


* * *


Q: How many times, how many times after you separated did you go back to that
house after Cyndy had said, "Greg, don't come over here"? How many times
did you go back? Ten? Fifteen?


A: I don't know.


Q: You want me to get this bag of her clothing here out and we can go through it
piece by piece, the single shoes? You know how you let somebody know
you've been in their house when they didn't want you there, is you take one of
their shoes.


Defense Counsel: If the court please, we object.


State: You did that, didn't you?


Defense Counsel: We object to him making - - states a fact, "her house" when, in
fact it's this man's separate property. It was his home, and it's not just her house. 
He had an absolute right to go in there any time he wished.


* * *


Q: Well, this whole bag here came out of your apartment at Wildwood, and it's
her clothes.


Defense Counsel: We'll object to that - - upon the grounds that there's no outside
evidence, no evidence of it.


Trial Court: The objection is overruled.


Q: I'll show you what's been marked as State's exhibit No. 57, and I'll ask if you
recognize that location.


A: Yes, sir.


Q: That's your closet at apartment 112 at Wildwood; isn't it?


A: Yes, sir.


Q: That's got a large plastic bag in the floor at the back of the closet, doesn't it?


A: Yes, sir.


Defense Counsel: At this time, if the court please, we have a motion we would
like to make outside going into the search of this man's apartment without a
warrant.


* * *



 It is well settled that to preserve error, a point of error on appeal must comport to
the objection voiced at trial. Sandow v. State, 787 S.W.2d 588, 596 (Tex. App.--Austin 1990,
pet. ref'd) (citing Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)). Appellant
complains on appeal that the photograph of a plastic bag full of clothing was inadmissible because
it was obtained during an illegal search and seizure. However, he did not object on this ground
until the State had already elicited substantial testimony regarding the clothing that was taken from
Cynthia's home and stored in a plastic bag in appellant's closet at his Wildwood apartment. By
the time appellant objected on the ground complained of, it was too late. See Dinkins v. State, 894
S.W.2d 330, 355 (Tex. Crim. App.) (objection should be made as soon as ground for objection
becomes apparent in order to preserve error), cert. denied, 516 U.S. 832 (1995). We hold that
Gregory failed to preserve error and we overrule issue four.


Submissions to the Jury

 Gregory claims the trial court erred in failing to submit the foregoing search issues
to the jury as required by the Texas Code of Criminal Procedure, which disallows evidence
obtained in violation of the federal and state constitutions:


 In any case where the legal evidence raises an issue hereunder, the jury
shall be instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such event,
the jury shall disregard any such evidence so obtained.



Tex. Code Crim. Proc. Ann. art. 38.23(a). The Texas Court of Criminal Appeals has interpreted
this provision to require an Article 38.23 instruction only if the trial evidence raised a factual issue
concerning whether the evidence was obtained in violation of the federal or state constitutions. 
Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996), cert. denied, 118 S. Ct. 90 (1998). 
In that case, the court held the defendant was not entitled to such an instruction because there was
no dispute regarding the facts surrounding the defendant's arrest and confession. Id. (citing
Thomas, 723 S.W.2d at 707).

 Appellant claims there are factual issues as to whether the detective had a reason
to read the handwritten notes and whether appellant gave his apartment manager permission to
allow the officers into his apartment. These are not factual questions but are legal questions as
to whether the evidence obtained from the warrantless search and seizure was admissible. 
Gregory does not contend there is any factual dispute as to how the evidence was obtained. Only
when there is a fact issue regarding the manner in which the evidence was obtained does Article
38.23 require the court to submit an instruction to the jury. See Hardin v. State, 951 S.W.2d 208,
210 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (citing Thomas, 723 S.W.2d at 707). We
find there were no factual disputes as to the manner in which the complained-of evidence was
obtained. We overrule issue five.

 Gregory next complains that the trial court erred in failing to charge the jury on
whether his conduct was voluntary in discharging the handgun. At trial, he testified that the gun
fired while he was attempting to unload it. He was handling the gun, trying to eject the shells, and
then the gun "just exploded." Appellant specifically requested that the jury be given the charge
that if it found appellant did not voluntarily discharge the pistol it must acquit him. The trial court
overruled his request and submitted instead, in part, the following charge:


 A person commits the offense of Capital Murder if he commits Murder, as
defined below, and the person intentionally commits the murder in the course of
committing or attempting to commit retaliation or in the course of committing or
attempting to commit kidnaping.


 A person commits the offense of Murder if he intentionally or knowingly
causes the death of an individual.



(Emphasis added). 

 Appellant relies on Brown v. State, 955 S.W.2d 276 (Tex. Crim. App. 1997) to
establish that the trial court erred in refusing his requested instruction regarding voluntariness. 
There, Brown and two witnesses testified that Brown's handgun accidentally discharged after he
was bumped by another individual. The court held that the requested charge must be submitted
when the evidence raised the issue of voluntariness. "If the issue is raised by the evidence, a jury
may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether
he voluntarily engaged in the conduct of which he was accused." 955 S.W.2d at 279 (quoting
Williams v. State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982). Furthermore, the court found
that the issue of voluntariness is not subsumed by the instruction requiring the jury to find the
offense was intentionally or knowingly committed. Brown, 955 S.W.2d at 280.

 As the dissent in Brown notes, the case law regarding involuntariness, as opposed
to accident, and the evidentiary requirements for a jury instruction on voluntary conduct is
convoluted and confusing, often turning on subtle factual distinctions. Id. at 281 (Price, J.,
dissenting). Until we receive further guidance from the Court of Criminal Appeals in this
troublesome area, we determine that the present dispute is controlled by George v. State, 681
S.W.2d 43 (Tex. Crim. App. 1984) rather than Brown. In George, the court held as a matter of
law that when the accused voluntarily engages in conduct that includes a bodily movement
sufficient for the gun to discharge a bullet, "without more--such as precipitation by another
individual," a jury need not be charged on the voluntariness of the accused's conduct. 681
S.W.2d at 47 (emphasis added). Gregory does not claim that another individual bumped his gun,
causing it to discharge as in Brown. The Court of Criminal Appeals has noted that where the
conduct of a third party is implicated, the charge on voluntariness may be required. See George,
681 S.W.2d at 46-47, n.8 (contrasting Garcia v. State, 605 S.W.2d 565, 566 (Tex. Crim. App.
1980) (charge on voluntary conduct required when deceased grabbed accused's elbow and
attempted to take away gun, causing gun to go off), with Dockery v. State, 542 S.W.2d 644, 649-50 (Tex. Crim. App. 1976) (no instruction required when accused was asleep with a pistol in his
hand, raised up and pistol accidentally went off while he was trying to uncock it). See also
Withers v. State, 631 S.W.2d 595, 597 (Tex. App.--El Paso 1982) (instruction must be given if
the discharge of the weapon results from the conduct of a third party rather than the voluntary
conduct of the accused), aff'd on other grounds, 642 S.W.2d 486 (Tex. Crim. App. 1982).

 Gregory's attempt to unload his gun when it discharged cannot be distinguished
from Dockery's attempt to uncock his pistol when it discharged or George's cocking the hammer
which then "slipped off his thumb." Gregory's act of handling the gun which discharged when
he attempted to unload it was sufficiently voluntary, absent interference by a third party, for the
trial court to refuse the requested charge. There was no evidence of any voluntary conduct by
another that caused Gregory's gun to "explode," and like the George court we are not persuaded
that a mechanical object is capable of volition apart from a human actor. Gregory was the only
human actor involved with the gun when it discharged the bullet into his wife. The trial court did
not err in refusing appellant's requested instruction on voluntary conduct. We overrule issue six.


Evidence of Extraneous Offenses

 In issues seven and eight, Gregory argues the trial court erred regarding evidence that was
inadmissible as an extraneous offense. Specifically, he claims the trial court erred in admitting
in evidence that he took his daughter's bicycle from his wife's home, and that the trial court erred
in refusing to give a limiting instruction regarding such evidence. We find appellant has not
preserved his right to complain of error. The following testimony from trial is relevant in our
determination:

Q: You took belongings of hers, clothes, shoes, jewelry from that house to torment
her; didn't you?


A: No, sir.


Q: No? You stole your daughter's bicycle, didn't you?


A: No, sir.


Q: It was reported stolen. It was in your apartment.


Defense Counsel: If the court please, the man has a right to borrow a bicycle when
he had no vehicle, and that he had as much ownership to that bicycle as anybody.


Trial Court: If that's an objection, [counselor], it's overruled.


Q: Brittany's bicycle was at your apartment, wasn't it? You want to see the
picture of it?


A: (Shakes head side to side).


Defense Counsel: If the court please, we move the court for a mistrial upon the
grounds that he made an accusation so unfounded that this man committed the
offense of theft, an extraneous offense.



 A defendant must make a timely objection in order to preserve an error in the
admission of evidence. See Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App.), cert.
denied, 516 U.S. 832 (1995). An objection should be made as soon as the ground for an objection
becomes apparent, which generally occurs when the evidence is admitted. Id. Therefore, if a
question clearly calls for an objectionable response, a defendant should make an objection before
the witness responds. Id. Rather than immediately object, appellant answered the State when it
questioned him about the bicycle. After Gregory answered and the State responded, his attorney
did not object but commented on whether it was excusable for Gregory to have taken the bicycle. 
Even if we construe the comment as an objection, it was not an objection upon the grounds
complained of on appeal. See Sandow v. State, 787 S.W.2d 588, 596 (Tex. App.--Austin 1990,
pet. ref'd) (error not preserved if error on appeal does not comport to objection voiced at trial)
(citing Thomas, 723 S.W.2d at 700). Although appellant eventually complained of the evidence
of the bicycle as admission of an extraneous offense, this objection was not made until three
objectionable questions later and therefore it was not timely. See Dinkins, 894 S.W.2d at 355;
Guzman v. State, 521 S.W.2d 267, 269 (Tex. Crim. App. 1975) (error waived when defendant
failed to object until three objectionable questions had been asked and answered).

 Even if there was error in admitting evidence that appellant stole the bicycle, it was
harmless. See Tex. R. App. P. 44.2(b). There was unobjected-to evidence that Gregory stole
other items from his wife's house; therefore, evidence that he stole his daughter's bicycle was
merely cumulative and did not affect any of appellant's substantial rights. We overrule issue
seven.

 Gregory next complains that the trial court erred in failing to give a limiting
instruction regarding the extraneous offense at both the evidence stage and the jury-charge stage. 
We do not reach whether such failure was error because we find that this error has also been
waived. After Gregory objected to evidence of the stolen bicycle on the ground that it was an
extraneous offense, the trial court overruled his objection. He argued that the evidence deprived
him of a right to a fair trial, and that he objected subject to his motion for mistrial. Gregory then
asked the court to instruct the jury not to consider his statement that he stole his daughter's
bicycle. The trial court refused his request. At the jury-charge stage, appellant requested the
charge to instruct the jury to limit its consideration of the theft of the bicycle to the purpose for
which it was admitted. The court declined to include this instruction.

 Generally, an instruction limiting a jury's consideration of certain evidence is not
required when the evidence is admissible to prove a main fact in the case. See Porter v. State, 709
S.W.2d 213, 215 (Tex. Crim. App. 1986). If evidence is offered for a specific purpose, the
defendant is entitled upon proper request to a charge limiting the jury's consideration of that
evidence to the purpose for which it was admitted. Id. The party opposing the evidence has the
burden of requesting a limiting instruction. See Abdnor v. State, 808 S.W.2d 476, 478 (Tex.
Crim. App. 1991).

 Here, appellant requested the court to instruct the jury not to consider that he stole
the bicycle. In other words, he requested that the jury not consider evidence of his extraneous
offense altogether. He did not request an instruction limiting consideration of the evidence to the
purpose for which it was admitted. Although we do not require a defendant to use such exact
language, appellant requested an exclusion of the entire offense rather than a limiting instruction. 
Although Gregory properly requested a limiting instruction at the jury-charge stage, he waived
any preservation of error by not properly requesting an instruction at the evidence stage. An
objection to or request for an instruction in the jury charge is not sufficient to preserve error if no
limiting instruction is requested when the evidence is admitted. See In re A.F., 895 S.W.2d 481,
484 (Tex. App.--Austin 1995, no pet.). We overrule issue eight.

 In his final issue, Gregory complains the trial court erred in admitting the divorce
petition without a limiting instruction because a portion of the petition contained evidence of an
extraneous offense, namely that appellant committed adultery. Appellant does not claim that the
petition in its entirety is inadmissible. In fact, at trial he claimed that he had no objection to the
petition as a whole but objected to specific portions on the grounds of hearsay and unfair
prejudice. Appellant made no other objection or request. Failure to request a limiting instruction
by the party opposing the evidence waives the party's right to complain of the failure to so instruct
the jury on appeal. See Tex. R. Evid. 105(a); In re A.F., 895 S.W.2d at 484 (failure to comply
with requirement that request for limiting instruction be made when evidence is admitted relieves
trial court's obligation to provide one); see also Abdnor, 808 S.W.2d at 478 (burden is on party
opposing evidence to request limiting instruction). We overrule issue nine.


CONCLUSION

 We conclude the evidence was sufficient to sustain appellant's conviction of capital
murder and that there was no error in the court below. The judgment of the trial court is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Powers, Kidd, and B. A. Smith

Affirmed

Filed: September 17, 1998

Publish

1. Though issues three, four, seven, and nine go to the admissibility of certain evidence, that
is immaterial to a sufficiency of evidence review. In reviewing the sufficiency of the evidence,
an appellate court must look at all of the evidence that was before the jury, whether properly or
improperly admitted, so that it may assess the jury verdict from the jury's perspective. See Miles
v. State, 918 S.W.2d 511, 512 (Tex. Crim. App. 1996).
2. A person commits a murder if he intentionally or knowingly causes the death of an
individual. Tex. Penal Code Ann. § 19.02(b)(1) (West 1994).
3. "No evidence obtained by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of
America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex.
Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1998).


="font-family: CG Times (W1) Regular"> Generally, an instruction limiting a jury's consideration of certain evidence is not
required when the evidence is admissible to prove a main fact in the case. See Porter v. State, 709
S.W.2d 213, 215 (Tex. Crim. App. 1986). If evidence is offered for a specific purpose, the
defendant is entitled upon proper request to a charge limiting the jury's consideration of that
evidence to the purpose for which it was admitted. Id. The party opposing the evidence has the
burden of requesting a limiting instruction. See Abdnor v. State, 808 S.W.2d 476, 478 (Tex.
Crim. App. 1991).

 Here, appellant requested the court to instruct the jury not to consider that he stole
the bicycle. In other words, he requested that the jury not consider evidence of his extraneous
offense altogether. He did not request an instruction limiting consideration of the evidence to the
purpose for which it was admitted. Although we do not require a defendant to use such exact
language, appellant requested an exclusion of the entire offense rather than a limiting instruction. 
Although Gregory properly requested a limiting instruction at the jury-charge stage, he waived
any preservation of error by not properly requesting an instruction at the evidence stage. An
objection to or request for an instruction in the jury charge is not sufficient to preserve error if no
limiting instruction is requested when the evidence is admitted. See In re A.F., 895 S.W.2d 481,
484 (Tex. App.--Austin 1995, no pet.). We overrule issue eight.

 In his final issue, Gregory complains the trial court erred in admitting the divorce
petition without a limiting instruction because a portion of the petition contained evidence of an
extraneous offense, namely that appellant committed adu