# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00399-CR

**Robert Edward Hastings, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 000255, HONORABLE FRED A. MOORE, JUDGE PRESIDING

Appellant Robert Edward Hastings was convicted of the offense of threatening unlawful harm against a prospective witness. *See* Tex. Pen. Code Ann. ' 36.06(a)(1)(A) (West Supp. 2002). The jury assessed appellant=s punishment at imprisonment for ten years and a fine of $10,000 and recommended that appellant be granted community supervision. The trial court suspended imposition of the sentence and placed appellant on community supervision. On appeal, appellant complains about the legal insufficiency of the evidence and about the jury charge. We will affirm the judgment.

In his first point of error, appellant insists that the evidence is insufficient to support the jury=s verdict. In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.C Austin 2000, pet. ref=d). The standard of review is the same

whether the evidence is direct or circumstantial, or both.  *See Kutzner v. State*, 994 S.W.2d 180, 184

(Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994).

A person commits an offense if he intentionally or knowingly harms or threatens to

harm another by an unlawful act on account of the service of another as a public servant, witness,

prospective witness, or an informant.  *See* Tex. Pen. Code Ann. ' 36.06(a)(1)(A) (West Supp.

2002).  Here, it was alleged that appellant Aintentionally and knowingly threatened to  harm, in

person, another, to-wit: Jose Viegra, by an unlawful act, to-wit: threats of assault and bodily injury, in

retaliation for and on account of the service of the said Jose Viegra as a witness and a prospective

witness.@[1]

Because there was no evidence that Viegra was going to be or had been a witness

against appellant, the trial court only allowed the jury to determine whether appellant made unlawful

threats to Viegra on account of Viegra=s service as a *prospective* witness.  The term Aprospective

witness@ is not statutorily defined; therefore, we ascribe to that term its ordinary and usual meaning.

AProspective@ has been defined as Aanticipated or expected; likely to come about.@  *Blacks Law*

*Dictionary* 1238 (7th ed.) 1999.  AWitness@ has been defined as Aone who has testified in an official

proceeding.@  *Jones v. State*, 628 S.W.2d 51, 55 (Tex. Crim. App. 1980).  A Aprospective witness@ has

---

[1]  The State admits that it would have been more appropriate to have charged appellant with threatening Viegra, an Alcohol, Tobacco and Firearms agent, on account of his being a public servant rather than on account of his being a prospective witness.  *See Helleson v. State*, 5 S.W.3d 393 (Tex. App.CFort Worth 1999, pet. ref=d); *Stafford v. State*, 948 S.W.2d 921 (Tex. App.CTexarkana 1997, pet. ref=d).

been defined as "a person who may testify in an official proceeding." *Morrow v. State*, 862 S.W.2d 612, 614 (Tex. Crim. App. 1993). "[A]n official proceeding need not be initiated in order for a person to be a >prospective witness= under section 36.06 of the Penal Code." *Id.* at 615; *see also Webb v. State*, 991 S.W.2d 408, 417 (Tex. App.—Houston [14th Dist.] 1999, pet. ref=d).

On January 14, 2000, in appellant=s absence, seven Federal Bureau of Alcohol, Tobacco and Firearms agents (ATF) and a Hays County deputy sheriff executed a search warrant at appellant=s home in Hays County near Wimberly. The warrant authorized a search for unlawfully possessed automatic weapons and "possibly a sawed-off shotgun." The officers did not find the weapons they expected to find. However, two handguns, a shotgun and various types of ammunition were found in the search.[2]

While the search was still in progress, ATF Resident Agent-in-Charge Gary Orchowski, Agents Hugo Berarra, James O=Flaherty, Jose Viegra, and Hays County Deputy Sheriff Lynn Lueders, armed with an arrest warrant, went to the Del Valle Junior High School in Travis County where appellant was employed as a substitute teacher. At the request of the officers, the school principal called appellant to his office. There, Orchowski identified himself and the other officers who wore shirts bearing an ATF insignia. Orchowski began to interview appellant and told him about the search of his house. Appellant told Orchowski that he no longer had a federal firearms license and that they had no reason to speak to him. As Orchowski continued to question appellant, appellant became hostile and belligerent and "made anti-government remarks." Appellant was

---

[2] A federal charge filed against appellant was dismissed. The record does not show the nature of the charge or the reason for its dismissal.

verbally abusive; he asked Orchowski, in crude language, how many times he had performed oral sodomy on President Clinton.

When appellant arose from his chair in an angry and threatening manner, Agents Berarra, O=Flaherty, and Viegra forcibly handcuffed appellant and seated him back in his chair. When, in an aggressive manner, appellant again tried to get up out of his chair, the officers put him on the floor. Appellant tried to stand up and Viegra put his knee between appellant=s shoulder blades forcing appellant to remain down on the floor. Appellant then looked around at Viegra and said, Ayou better watch out, you don=t know who you=re dealing with. Once I=m free, I=m going to get you.@ Orchowski, who was in charge of the interrogation of appellant, testified he was called out of the room and he did not hear appellant threaten Viegra.

O=Flaherty, who helped subdue appellant, testified he was in and out of the room at times and he did not hear appellant threaten Viegra. Agent Berrara was not a trial witness. Lueders testified that he heard appellant threaten Viegra. However, Lueders testified that he did not know whether Viegra would ever be called as a witness to testify against appellant.

Robert Lawson, a Travis County deputy sheriff, was assigned to the Del Valle Junior High School as a Aresource@ officer. Lawson and appellant were acquainted with each other. During the interrogation of appellant, Lawson unsuccessfully tried to calm appellant when he became upset. After the interview was terminated, Lawson and Viegra took appellant to the near-by Travis County Correctional Complex at Del Valle so that he could be held there over the weekend. On the way to the Correctional Complex, appellant who was still upset told Lawson, AWell, its been nice knowing you. I don=t have

**4**

nothing to live for.@  Both Lawson and Viegra thought that appellant was depressed and made Akind of a suicidal threat.@

When they arrived at the Correctional Complex, they were met by Sergeant John Oman. After they got out of the car, appellant said to Viegra, AIf I wasn=t handcuffed, I=d put my foot right into your f___ing jugular vein.@  Continuing to Arant and rave,@ appellant told Viegra AI=ll kick your mother-f___ing ass.@  Viegra testified that he took appellant=s comments as threats.  Also, Viegra testified that during the entire encounter, appellant did not seem to be rational and it was Viegra=s impression that appellant may have been suffering from mental illness.  Oman testified that he heard appellant threaten Viegra.  However, Oman did not believe appellant=s threats were Areally conditioned on whether or not Agent Viegra was going to be a witness or testify against him.@

Viegra testified that appellant was not told that he, Viegra, had participated in the search at appellant=s home.  There is no other evidence that appellant knew Viegra had participated in that search.

The evidence is sufficient to prove that appellant made threats of bodily harm against Viegra.  However, appellant did not specifically express his reason for threatening Viegra.  Therefore, we must determine whether the circumstances in which the threats were made could support a rational finding that appellant threatened Viegra because he expected or anticipated that Viegra might be a witness against him in a future judicial proceeding.  Immediately before appellant first threatened Viegra, Viegra had participated in forcibly subduing and handcuffing appellant and at the time the first threat was made, Viegra was physically restraining appellant and holding him down on the floor.  At the time the State rested its case, there was insufficient direct or circumstantial evidence, even viewed in the light most favorable to the prosecution, that would support a rational finding that appellant threatened Viegra because appellant

**5**

expected or anticipated that Viegra would be a witness against him in a future judicial proceeding. However, appellant insisted on testifying in his own defense; we must consider that testimony.

The record shows defense counsel strongly advised appellant not to testify and warned him that his testimony would be detrimental to his defense. Appellant rejected counsel=s advice. Both on direct and cross examination, appellant rambled at length without answering the questions asked. Much of appellant=s disjointed, rambling, and conflicting testimony was not relevant to the issues in the case. Appellant testified that he had a psychology degree; he had been a school teacher, a Texas Department of Corrections employee, a private security guard, a voluntary probation officer, a mental health worker, and a small weapons expert in the Texas National Guard. Appellant testified about his great interest in guns and his staunch belief in Second Amendment rights. Also, appellant testified about his dislike for laws restricting ownership of some weapons and laws making it difficult to obtain some weapons. Appellant expounded on his belief that the criminal justice system was unfair and his dislike of ATF agents. He disliked ATF agents because they had killed innocent people in Waco, killed Randy Weaver=s wife at Ruby Ridge, and had hassled appellant when he had a federal firearms license. Appellant also dwelt on his pending divorce and the unfairness of his wife=s demands. Much of this testimony had slight, if any, relevance to the issues of the case. However, some of appellant=s testimony that had relevance to his case was damaging to his defense.

We quote excerpts from appellant=s testimony.

Q:  How long have you resided in the Travis County Jail?

R:  Since I was arrested on the 14th of January by ATF, who arrested me on a charge of possession of a firearm while under a protective order.

* * *

**6**

A: No, and most people are surprised about this new federal law about possession of a firearm while under a protective order. And a lot of cops don=t even know about it.

\* \* \*

Then they said, "You=re under" - - I believe they said, "You=re under arrest" or "A search warrant is being executed on your property." And I said, "What for?" And they said, "Possession of firearm without [sic] a protective order."

\* \* \*

A: First thing they told me when I walked in that office is, "You=re going to jail for a very long time." And the only thing I could think of was on these gun charges - - we=re talking like 20 years. I=m 52 years old. So basically, you=re talking about taking my life.

\* \* \*

That=s when he said that, "You=re going away for a very long time." And as I said, I know that the feds give a very long time for weapons charges. They gave one of these guys at Waco 40 years. So it=s not uncommon to have a 20-year sentence. And there is no parole in the federal system. If they give you 20 years, you do 20 years. So I was very upset.

\* \* \*

They=re now coming down into domestic disputes, interfering in state domestic matters. And they=re putting people in jail for very long times. You can be a legal gun owner one minute and your spouse goes and files a divorce, if that spouse gets a protective order on you - - and I want to talk about protective orders in a minute. If that spouse gets a protective order on you, you go in an instant from being a law-abiding citizen to being a criminal. A criminal facing at least 20 years in prison.

\* \* \*

Guilt has really nothing to do with it. And I=m sorry to tell you people this, but the criminal justice system hasn=t improved very much, if any at all. It=s probably gotten worse since Jesus Christ walked on the earth. And you know what happened to him. And he was perfect and completely guiltless.

7

Q: So tell me what happened. What was said next after the mention of going to prison for a long time?

A: Of course, that came as a shock to me. We started into a discussion on federal statutes. And I still haven=t gotten a copy of the statute. So I can=t say exactly what it says. But basically, it=s possession of a firearm while under a protective order.

* * *

A: At that point, he said, Awhere are the AKs? Where are the guns?@ And I said, AWell, wait a minute.@ I said, AIf I tell you where the guns are, I=m still going to jail, aren=t I?@ And he said, AThat=s right.@ And I said, AWell, what do I get out of it?@ And he said, AWell, we=ll put in a good word to the judge for you.

Appellant=s own testimony, along with the other evidence, when viewed in the light most favorable to the prosecution, would allow the jury to rationally find, beyond a reasonable doubt, that appellant knew at the time of the threats that he was committing a criminal offense by possessing handguns and a shotgun while he was under a protective order, and that he had reason to believe the ATF officers intended to prosecute him and seek lengthy incarceration as punishment. The jury could rationally conclude that when appellant threatened Viegra, appellant anticipated Viegra might be a prospective witness against him in a future criminal prosecution and made his threats on account of that fact. The evidence is legally sufficient to support the jury=s verdict. Appellant=s first point of error is overruled.

In his second point of error, appellant asserts that the trial court erred in refusing to instruct the jurors Athat before they could convict appellant, they had to determine from the perspective of appellant that he considered Agent Jose Viegra a >prospective witness.=@ The record fails to show that at the time of trial appellant filed a written request or dictated into the record the requested charge he now says should have been submitted to the jury. Therefore, the error claimed was not properly preserved for appellate review. *See* Tex. Code Crim. Proc. Ann. art. 36.15 (West Supp. 2002); *Vasquez v. State*, 919 S.W.2d

**8**

433, 435 (Tex. Crim. App. 1996). Moreover, appellant failed to preserve for review the error now claimed by filing a written objection or dictating into the record his objection to the charge. *See* Tex. Code. Crim. Proc. Ann. art. 36.14 (West Supp. 2002); *Vasquez*, 919 S.W.2d at 435.

In support of his contention, appellant directs our attention to a statement of the trial court found in the record.

> I have not included the definition that Mr. Myers wanted on - - I guess he said you should view prospective witnesses from the standpoint of the defendant. If you want to argue that, that=s fine. . . . That=s plain meaning of the way the whole charge reads. It is not statutory. There is no such definition. That=s case law when they were determining sufficiency of the evidence. And I will not give it. But you can argue it if you wish to, sir.

Although we can only speculate, it appears that the trial court refused to define the term Aprospective witness.@ That term is not statutorily defined. The words Aprospective@ and Awitness@ have ordinary, common meanings. Therefore, it was not necessary to define these words for the jury. *See Morrow*, 862 S.W.2d at 614; *Dooley v. State*, 999 S.W.2d 796, 799 (Tex. App.CTyler 1998, pet. ref=d); *see also Andrews v. State*, 652 S.W.2d 370, 375-77 (Tex. Crim. App. 1983); *Roise v. State*, 7 S.W.3d 225, 242 (Tex. App.CAustin 1999, pet. ref=d).

Even if appellant had properly and timely requested the trial court to define Aprospective witness@ in the jury charge, refusal of the request would not have been error.[3] Furthermore, the individual

---

[3] Appellant argues that whether someone is a prospective witness is to be judged from the standpoint of the person who retaliates. Appellant cites *Davis v. State*, 890 S.W.2d 489, 492 (Tex. App.CEastland 1995, no pet.), and *Solomon v. State*, 830 S.W.2d 636 (Tex. App.CTexarkana 1992, pet. ref=d). We believe that the courts in *Davis* and *Solomon* were in fact saying that whether a person was a prospective witness should be viewed from the standpoint of a defendant as a reasonable person. *Davis* and *Solomon* did not hold that it was necessary to submit a special charge to the jury.

Aperspective of appellant that he considered Agent Jose Viegra a >prospective witness=@ is not the proper standard to be applied by the jury. The proper standard is the Areasonable person@ standard. The trial court properly charged the jury.[4] Appellant=s second point of error is overruled.

The judgment is affirmed.

Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Dally[*]: Opinion by Justice Dally; Dissenting Opinion by Justice B. A. Smith

Affirmed

Filed: April 25, 2002

Publish

---

[*] Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).

---

[4] The trial court charged the jury that if it believed from the evidence beyond a reasonable doubt that appellant

> did then and there intentionally or knowingly threaten to harm in person, another, to-wit: Jose Viegra, by an unlawful act, to-wit: threats of assault or bodily injury, in retaliation for or on account of the service of the said Jose Viegra as a prospective witness; then you will find the defendant guilty of the offense of retaliation and so say by your verdict.
>
> But, if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict Anot guilty.@