**Lakeith Lawayne COLEMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 01–02–00317–CR, 01–02–00316–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 3, 2003.

Belinda Johnson Chagnard, Houston, TX, for Appellant.

Donald W. Rogers, Jr., Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney—Harris County, Houston, TX, for Appellee.

Panel consists of Justices HEDGES, NUCHIA, and ADELE KEYES.

## OPINION

ADELE HEDGES, Justice.

This appeal derives from two convictions in two separate causes in the trial court (trial cause numbers 881374 and 881375, and appellate cause numbers 01–02–00317–CR and 01–02–00316–CR, respectively). Because both appeals raise substantially the same issues, we address them together on appeal.

A jury found appellant, Lakeith Lawayne Coleman, guilty of (1) the felony offense of possession with intent to deliver a controlled substance, cocaine, weighing more than four grams and less than 200 grams, and (2) the felony offense of possession with intent to deliver a controlled substance, phencyclidine (PCP), weighing at least 400 grams. The jury found that appellant used a deadly weapon, a firearm, during the commission of each offense. The trial court sentenced appellant to 50 years' confinement in cause number 01–02–00317–CR and 60 years' confinement in cause number 01–02–00316–CR and assessed a fine in the amount of $150,000.

With regard to both cause numbers, appellant contends that: (1) the trial court erred in denying his first and second motions to suppress evidence and (2) the evidence was legally and factually insufficient: (a) to prove that his consent to search was voluntary, (b) to affirmatively link the appellant to the controlled substances, and (c) to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense. In cause number 01–02–00316–CR, appellant argues that the evidence was legally and factually insufficient to establish an adequate chain of custody between the substance seized and the substance identified as PCP. We affirm.

## Background

Officers Fuller and Lerma were conducting narcotics surveillance in the 3800 block of Kashmere in Houston. The officers saw a truck, which they had seen a few days earlier at 4908 Crane Street, drive up and park in front of 3818 Kashmere. Appellant got out of the truck, walked around to the front of it while

talking on a cell phone, and then got back into the truck. A car then pulled up and stopped behind appellant's truck. A man got out of the car, got into the passenger's seat of appellant's truck, and, after a minute or two, got out of the truck and left. This pattern of behavior was observed two more times during the surveillance. Officer Lerma testified that, because of this behavior, the officers believed that appellant was involved in narcotics activity.

Officer Fuller contacted Officer Gratz, who was in uniform and assisting the officers, and told him to approach and detain appellant. Officer Gratz detained appellant; placing him in the back seat of the patrol car. The officers smelled the odor of PCP emanating from appellant's truck when the door was opened. Officer Fuller approached appellant and asked if there were narcotics in the truck. Appellant said there were not. Officer Fuller then asked appellant to give the officers consent to search his truck and his residence. After appellant's handcuffs were removed, he read and signed a consent to search form. The officers testified that appellant appeared to understand the form and was not forced to sign it.

Subsequently, the officers searched appellant's truck, but no narcotics were found.

Appellant was immediately transported to his residence, where Officers Fuller and Gratz opened the door with appellant's key and began searching the house. Appellant remained in the patrol car during the search. The officers found controlled substances, including PCP and cocaine, as well as drug paraphernalia used to distribute controlled substances, such as vials, in appellant's house. The officers also found large amounts of money and jewelry and appellant's college identification card inside a safe located in the front bedroom.

Weapons were also recovered from this bedroom.

Appellant admitted that he lived in the house, and the officers found mail with appellant's name and address on it in the front bedroom. Appellant admitted that the electric power at the house was registered in his name, and he told an interviewer at the jail that he lived alone in the house.

## First Motion to Suppress

In his first points of error in both cause numbers, appellant contends that the trial court erred in denying his first motion to suppress evidence based on consent given after his detention had become unlawful.

Appellant filed a pretrial motion to suppress. A rubber stamped notation on the order form attached to the motion to suppress states, "Set for hearing prior to Voir Dire, if not dispositive." Generally, a defendant must get an explicit ruling on a complaint to preserve error. TEX. R.APP. P. 33.1(a)(2)(A); *Darty v. State,* 709 S.W.2d 652, 655 (Tex.Crim.App.1986); *Villegas v. State,* 871 S.W.2d 894, 899 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). The mere filing of a motion to suppress does not preserve error. *Thomas v. State,* 884 S.W.2d 215, 216 (Tex.App.-El Paso 1994, pet. ref'd). Appellant did not obtain a ruling on this motion to suppress. Consequently, appellant did not preserve this issue for appellate review.

We overrule appellant's first points of error in both cause numbers.

## Second Motion to Suppress

In his second points of error in both cause numbers, appellant contends that the trial court erred in denying his second motion to suppress evidence based on consent given after his detention had become unlawful. A timely motion at trial

is required in order to preserve error. Tex.R.App. P. 33.1(a)(1); *Thomas,* 884 S.W.2d at 216. A motion must be "raised at the earliest opportunity" or "as soon as the ground ... becomes apparent" to be timely. *Thomas,* 884 S.W.2d at 216. Generally, the ground for objection becomes apparent when the item is offered into evidence. *Dinkins v. State,* 894 S.W.2d 330, 355 (Tex.Crim.App.1995). Appellant must object before substantial testimony is given regarding the alleged illegally seized item. *Angelo v. State,* 977 S.W.2d 169, 177 (Tex.App.-Austin 1998, pet. ref'd). Even constitutional rights, such as protection from an unlawful search and seizure, can be waived by failing to object in a timely manner. *Little v. State,* 758 S.W.2d 551, 564 (Tex.Crim.App.1988).

Appellant's second motion to suppress was not brought to the trial court's attention until after the State had rested its case during the guilt-innocence stage of the trial. By that time, four police officers and a crime laboratory chemist had already testified extensively about the allegedly illegally seized items. Because his motion to suppress was not timely, appellant waived error, if any.

We overrule appellant's second points of error in both cause numbers.

### Sufficiency of the Evidence

 In his third through eleventh points of error, appellant challenges the legal and factual sufficiency of the evidence. We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Taylor v. State,* 10 S.W.3d 673, 685 (Tex. Crim.App.2000). In reviewing the factual

sufficiency of the evidence, we examine all the evidence in a neutral light and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *King v. State,* 29 S.W.3d 556, 563 (Tex.Crim.App.2000). In conducting our analysis, we must avoid substituting our judgment for that of the fact-finder. *Id.*

### *Unlawful Detention and Consent to Search*

 In his third and fourth points of error in both cause numbers, appellant contends that the evidence was legally and factually insufficient to support his conviction for unlawful possession of cocaine and PCP with intent to deliver because the State did not prove that his consent to the search was not tainted by an unlawful detention. In his fifth and sixth points of error in both cause numbers, appellant contends that the evidence was legally and factually insufficient to support his conviction for unlawful possession of cocaine and PCP with intent to deliver because the State did not prove that appellant voluntarily consented to the search of his residence.

Appellant's arguments are without merit. It is not the State's burden to prove, as an element of the offense, that the evidence of the offense was properly and lawfully obtained.[1] Accordingly, we overrule appellant's third through sixth points of error in both cause numbers.

### *Affirmative Links*

 In his seventh and eighth points of error in both cause numbers, appellant contends that the evidence was legally and factually insufficient where the State did

---

1. Appellant's arguments are similar to the argument this Court rejected in *Morales v. State,* 95 S.W.3d 561, 563 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

not affirmatively link appellant to the cocaine and PCP found at his house. To convict an accused of unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, custody, control, and management over the contraband; and (2) that the accused knew the matter was contraband. *Gilbert v. State,* 874 S.W.2d 290, 297 (Tex.App–Houston [1st Dist.] 1994, pet. ref'd); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992).

■ We have held that the following circumstances are evidence of affirmative links: (1) presence when the search was executed; (2) contraband in plain view; (3) proximity to and accessibility of the contraband; (4) accused under the influence of contraband when arrested; (5) accused's possession of other contraband when arrested; (6) accused's incriminating statements when arrested; (7) attempted flight; (8) furtive gestures; (9) odor of the contraband; (10) presence of other contraband; (11) accused's right to possession of the place where contraband was found; and (12) narcotics found in an enclosed place. *State v. Derrow,* 981 S.W.2d 776, 778 (Tex. App–Houston [1st Dist.] 1998, pet. ref'd). Presence of a large amount of cash can supply an inference that an individual is trafficking and, therefore, in possession of contraband. *Dade v. State,* 956 S.W.2d 75, 78–79 (Tex.App.-Tyler 1997, pet. ref'd).

■ The number of affirmative links present is not as important as the logical force they have in establishing the elements of the offense. *Corpus v. State,* 30 S.W.3d 35, 37–38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). We view the totality of the facts and circumstances. *Sosa v. State,* 845 S.W.2d 479, 483–84 (Tex.App.-Houston [1st Dist.] 1993, pet ref'd).

■ The evidence shows that appellant had multiple affirmative links to the cocaine and PCP. Appellant had a key to the house. Evidence was presented that appellant lived alone in the house, that he was renting the house, and that the electric power was registered in his name. The only mail that the officers found during the search was addressed to him at the Crane address and his vehicle was registered to that address. Appellant's college identification card was found in a safe, an enclosed place, that also contained PCP and a large amount of money and jewelry. Other contraband, cocaine and PCP, were found in other areas of the house. The officers testified that they smelled PCP in his truck and in his house. They also testified that he was nervous when they questioned him about his house.

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that appellant knowingly and intentionally possessed cocaine weighing more than four grams and less than 200 grams, and PCP weighing at least 400 grams with intent to deliver.

We overrule appellant's seventh points of error in both causes.

Finding the evidence legally sufficient, we proceed to appellant's eighth points of error in both causes, his factual sufficiency claims. In addition to the evidence that we considered under the legal sufficiency points of error, we now consider the rest of the evidence.

Appellant argues that his entire family had access and control over the residence and that his brother had convictions for unlawful possession of a controlled substance. Appellant presented evidence that he shared the premises with others, that others had access to the premises, and that appellant had no knowledge of the presence of controlled substances on the premises.

■ However, evidence is not factually insufficient merely because appellant offers a different explanation for the facts. *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim.App.1983); *Sosa*, 845 S.W.2d at 483. The jury as the trier of fact was the sole judge of the credibility of the witnesses and was free to accept or reject all or part of the witnesses' testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996). We cannot say that proof that appellant possessed and delivered the cocaine and PCP is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred.

We overrule appellant's eighth points of error in both causes.

### Deadly Weapon

In his ninth points of error in both cause numbers, appellant contends that the evidence was insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offenses. In *Patterson v. State*, the Court of Criminal Appeals explained the difference between "use" and "exhibit." 769 S.W.2d 938, 941 (Tex.Crim.App.1989). The court determined:

> "used ... during the commission of a felony offense" refers certainly to the wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.

*Id.* at 941; *Wynn v. State*, 847 S.W.2d 357, 360 (Tex.App.-Houston [1st Dist.] 1993), *aff'd on other grounds*, 864 S.W.2d 539 (Tex.Crim.App.1993).

In *Patterson*, the defendant was convicted of illegally possessing methamphetamine and using or exhibiting a deadly weapon during the commission of the offense. 769 S.W.2d at 939. When the police kicked in the door, Patterson was sitting on the far end of the sofa. *Id.* A bag containing methamphetamine, a wallet with $905 in cash, and a "gun boot" were located next to Patterson on an end table. *Id.* When the police entered, Patterson raised his hands and told the officers he had a gun between his leg and the end of the sofa. *Id.* On appeal, Patterson argued that the gun was to protect his money, not the narcotics. *Id.* at 940. The Court of Criminal Appeals held that a rational trier of fact could have found that the defendant used the firearm during the commission of the felony offense of possessing the contraband, in the sense that the firearm protected and facilitated the defendant's care, custody, and management of the contraband. *Id* at 942.

By contrast, in *Wynn*, this Court held that there was no evidence to support a deadly weapon finding where (1) the defendant was in the patrol car when the officers searched the house and was not within reach of the narcotics and guns, (2) the guns were found in a different bedroom than the narcotics, (3) the only room in the house identified with the defendant contained his wallet but did not contain any narcotics or weapons, (4) the clothing found in the closet where the narcotics were located was not linked to the defendant, and (5) the defendant was only one among at least two other persons who had access to the house. *Wynn*, 847 S.W.2d at 360–61.

■ In this case, as in *Patterson*, the guns were found in close proximity to the narcotics. The guns were found in the same bedroom as the safe. The safe contained: (1) two large bottles of PCP, (2) a large amount of money (over $11,000), (3) a large amount of jewelry, and (4) appellant's college identification card. Mail with appellant's name and address was also found in this room. The State pre-

sented evidence that appellant lived alone in the house. Under the facts and circumstances of this case, a rational trier of fact could have found that appellant *used* the firearm in the sense that the firearm protected and facilitated appellant's possession of the contraband. We follow the reasoning in *Patterson,* and conclude that the evidence was sufficient to justify an affirmative finding that appellant used or exhibited a deadly weapon during the commission of the offense.

We overrule appellant's ninth points of error in both causes.

### Chain of Custody

■ In his tenth and eleventh points of error in cause number 01–02–00316–CR, appellant contends that the evidence was legally and factually insufficient to establish an adequate chain of custody between the substance seized and the substance identified as PCP at trial. Officer Fuller testified that he recovered an orange juice bottle, later determined to contain PCP, behind the entertainment center in the back bedroom. He found two more large bottles containing PCP in the safe in the front bedroom. Officer Fuller identified State's Exhibit 26 as a photograph of the three bottles containing PCP that he found in appellant's house. He testified that he secured the bottles, tagged them, and put them into a narcotics lockbox. He picked up the narcotics from the HPD crime lab. He testified that he recognized State's Exhibits 3 and 4 because of the labels and lab numbers on them. Officer Fuller testified that, to his knowledge, aside from the testing, the narcotics had not been tampered with in any way.

Vipul Patel, a chemist with the Houston Police Department Crime Lab, testified that, after he received the juice bottles (depicted in State's Exhibit 26), he conducted a scientific analysis and determined that they contained PCP. He dried out all of the PCP from the bottles and put it into State's Exhibit 3. He put the remainder in State's Exhibit 4. He identified State's Exhibit 3 and 4 as the items containing the substance that he tested. Patel testified the PCP was not tampered with in any way.

Appellant presented no evidence that the PCP contained in State's Exhibit 3 was not the same substance the officers found in his home.

We conclude that the evidence was legally and factually sufficient to support the finding that the substance contained in the bottles seized by the officer was the same substance that the chemist tested and identified as PCP.

We overrule appellant's tenth and eleventh points of error in cause number 01–02–00316–CR.

### Conclusion

We affirm the judgments of the trial court in both causes.