Opinion issued August 24, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00243-CR




ANGEL LUIS CRUZ, Appellant

V.

THE STATE OF TEXAS , Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 994923




O P IN I O N

          A jury found appellant, Angel Luis Cruz, guilty of sexual assault, and the trial
court assessed punishment at 30 years’ confinement. In six points of error, appellant
contends (1) the trial court erroneously admitted hearsay evidence; (2) the evidence
is legally insufficient to support his conviction because the complainant’s testimony
was not credible; (3) the evidence is factually insufficient to support his conviction
because the complainant’s testimony was not credible; (4) the evidence is legally
insufficient to support a conviction for aggravated sexual assault


 because there was
no evidence that the gun used during the offense was a firearm; (5) the evidence is
factually insufficient to support a conviction for aggravated sexual assault because
there was no evidence that the gun used during the offense was a firearm, and (6) the
trial court erred by sentencing appellant for aggravated assault when he was charged
with, and found guilty of, sexual assault. We affirm the judgment as it relates to the
guilt-innocence portion of the trial, but reverse and remand the judgment for a new
punishment hearing.
BACKGROUND
          On March 11, 2004, the complainant, Gurleen Kaur, was alone at home when
she heard a knock at her door. She had been expecting someone from the electric
company because the lights at her home were out. When she opened the door, she
saw appellant. He was smiling and holding a piece of paper. He said something to
Kaur that she did not understand because of appellant’s thick accent. Appellant held
up the paper he was holding and looked to the ceiling at the back of Kaur’s house. 
Kaur thought that appellant was saying something about the lights, so she turned
around. While she had her back turned, appellant came inside the house and pulled
out a gun. Kaur was afraid and thought that she was going to be shot and killed.
          Appellant indicated to Kaur that she should be quiet and he forced her to walk
further into the house. When they reached Kaur’s mother’s bedroom, appellant said,
“Money, money, give me money.” He put on an orange bandana that covered his face
up to his nose. Kaur told him that there was nothing in the house to give him, and she
pulled out the drawers to her mother’s dresser to show him. Appellant started to pull
the drawers out himself, but he remembered to first put on gloves. He then made
Kaur sit on the bed, while he taunted her by shaking his belt.
          Kaur secretly grabbed her cellular telephone and called 9-1-1. She started
pleading with appellant to go to another house on Klamath Falls street in the hope
that the 9-1-1 operator would discern her location. Kaur then dropped the telephone
because she was afraid appellant would notice it. 
          When appellant asked Kaur something about the police, she was afraid that he
had discovered the 9-1-1 call. Kaur handed the house telephone to appellant and told
him to leave and to take the telephone with him so that she could not call the police.
She promised appellant that she would not call the police if he would just leave.
          Appellant saw a costume jewelry earring on the floor and said, “gold, gold.” 
Kaur looked for some gold, but could not find anything. Appellant brought Kaur
back to her mother’s bedroom, where he bound her arms and legs with telephone
cords. He took a cloth from one of the drawers and put it over Kaur’s eyes. He
grabbed Kaur’s right breast, but she was able to free one hand and push him away. 
Appellant then tied Kaur’s hands much tighter. 
          Kaur told appellant that there might be some gold in the garage, so appellant
made her hop to the garage. Kaur did not find any gold, so appellant freed Kaur’s
legs so she could walk and they returned to Kaur’s mother’s bedroom.
          Realizing that the police were not going to respond to her 9-1-1 call, Kaur
eventually broke free, ran to her room, and locked the door. However, the bottom
hinge of the door was broken, so appellant was able to break in very quickly.
          Appellant became very angry by Kaur’s escape attempt, grabbed Kaur by the
neck, pinned her to the wall, and began choking her. After wrestling with Kaur,
appellant stood up and stomped on Kaur’s neck. Appellant flipped Kaur on her
stomach and started stomping on her back. He sat down on Kaur’s back, pulled her
pajama bottoms down, and squeezed her buttocks. He then pushed two fingers into
her anus. Kaur pulled herself up to her knees, but appellant grabbed her hair and
slammed her jaw into the edge of the bed. Appellant also jabbed his knee into the
back of Kaur’s neck.
          When appellant started choking Kaur again, she reached for appellant’s gun,
which she saw lying on the bed. Kaur was unable to fire the gun because she could
not locate the safety, so appellant grabbed it away from her and started choking her
again. Kaur was finally able to kick appellant off of her, and the two sat there
exhausted.
          Appellant said, “Okay, now—now you give me money.” Kaur looked for
money one more time, but could find none. Appellant took Kaur back to her mother’s
bedroom, where he made her get in the closet. He said, “Don’t call the police or I’ll
come.” After Kaur heard appellant leave, she called a friend, her mother, and finally,
the police.
          V. Johnson with Harris County Constable, Precinct 5, was dispatched to Kaur’s
home. He talked to Kaur, who was very upset and had red marks on her neck and a
scratch on her forehead. Kaur told Johnson that she could not swallow. Some of the
rooms in the house had been ransacked. Kaur repeatedly asked to be allowed to
change her clothes, which led Johnson to believe that Kaur might have been sexually
assaulted. However, Kaur seemed ashamed and did not want to talk about it.
          Three days after the robbery, Kaur’s cousin, Jaswinder Singh, who lived two
blocks away from Kaur, was sitting near the pool in front of his house when he
noticed a car circling through the neighborhood. Singh noticed that the person in the
car looked like the person his cousin had described as her assailant, so he followed
the car. The car traveled from Singh’s street to Kaur’s street and then continued
circling the neighborhood several times. Singh thought this was suspicious, so he
wrote down the license plate number of the car.
          The next day, Sergeant J. E. Cashion with Harris County Constable, Precinct
5, was dispatched to a house near Kaur’s house. Kaur’s mother was there and was
extremely upset. She told Cashion that, as she was walking home from Singh’s
house, she had been followed by a black Nissan Altima, which she thought might be
related to the robbery. Singh, who arrived at the house shortly after Cashion, gave
Cashion the license plate from the car he had seen the day before. Cashion “flagged
the license plate number” so that any officer could see that it was linked to a
suspicious person report.
          The next day, P. Gerren with Harris County Constable, Precinct 5, was on
patrol less than a mile from Kaur’s house when he saw a black Altima with the
license plate number that had been “flagged.” He pulled the car over and noticed that
its registration had expired. Appellant, the driver, spoke little English and had a very
strong accent. He had a pair of gloves in his pockets and a loaded .380 caliber semi-automatic pistol under the seat in his car. Appellant was arrested for unlawfully
carrying a weapon and the car was searched. In the trunk, the police found several
real estate forms and a fanny pack that contained pry bars and other tools.
          After appellant was arrested, Detective C. Brown of the Harris County Sheriff’s
Department, placed appellant’s picture in a photospread and showed it to Kaur. Kaur
positively identified appellant as her assailant.
HEARSAY
          In point of error one, appellant contends the trial court erred by admitting
hearsay evidence. Specifically, appellant contends the trial court erred by permitting 
Sergeant Cashion to testify that the complainant’s mother, Sarbjit Kaur, told him that
she saw a black Altima car following her in the neighborhood. The State responds
that Kaur’s mother’s statements were admissible, through Cashion’s testimony, as
excited utterances.
          During Cashion’s testimony, the following exchange took place:
[Prosecutor]: Now, when you met with [Kaur’s mother], what was she
like? What was her demeanor like?
 
[Cashion]: She was very upset and scared.
 
[Prosecutor]: And were you able to determine why she was scared?
 
[Cashion]: Yes, ma’am. After speaking with her—she was walking
home from her brother [sic] from Canaan Bridge over to Klamath Falls. 
And as she was proceeding west on Klamath Falls, she noticed a black
vehicle following her.
 
[Prosecutor]: And how many time did she see that vehicle?
 
[Cashion]: About three times.
 
[Prosecutor]: Why was her attention drawn to the vehicle, if you know?
 
[Cashion]: Because the vehicle — 
 
[Defense Counsel]: Objection, Judge. Calls for hearsay and speculation.
 
[The Court]: Lay a foundation for it.
 
[The Prosecutor]: You said she was upset when you spoke with her?
 
[Cashion]: Right.
 
[The Prosecutor]: Okay. And how could you tell she was upset?
 
[Cashion]: Well, she was nervous and very shaken at the mere fact that
– trying to determine from her exactly what was transpiring out there at
the scene.
 
[Prosecutor]: Okay. And while she was in this upset or excited state, did
she tell you what drew her attention to the black vehicle?
 
[Cashion]: Right, sure did. That — 
 
[Defense Counsel]: Objection, Your Honor. That calls for a hearsay
answer.
 
[The Court]: That’s overruled.
 
[Cashion]: That when she was walking home, that the vehicle was
following real slowly behind her. And as she was getting close to her
house, the vehicle drove right past and she at that time recognized that
vehicle as possibly being connected to the robbery.

          Appellant did not voice a hearsay objection until after Cashion testified that
Mrs. Kaur told him that she had been followed by a black car when she was walking
home from her brother’s house, and that she had seen the car pass three times. The
only additional information that came after appellant’s hearsay objection was Mrs.
Kaur’s statement that she believed that the vehicle may have been involved in the
robbery. 
          In order to preserve error for appellate review, a timely specific objection must
be made and a ruling obtained. See Tex. R. App. P. 33.1(a)(1)(A). In order to be
considered timely, the objection must be made at the first opportunity or as soon as
the basis of the objection becomes apparent. See Johnson v. State, 803 S.W.2d 272,
291 (Tex. Crim. App. 1990); Worthington v. State, 859 S.W.2d 530, 532 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). An objection made after the prosecutor
has elicited the testimony comes too late. See Angelo v. State, 977 S.W.2d 169, 177
(Tex. App.—Austin 1998, pet. ref’d). Appellant did not preserve error on his hearsay
objection because he did not object until after the prosecutor elicited the testimony
about Mrs. Kaur being followed in her neighborhood by a black car.
          We further conclude that, even if the trial court erred in admitting this
evidence, it was harmless error. To determine whether the erroneous admission of
evidence amounts to reversible error, we look to Texas Rule of Appellate Procedure
44.2(b), governing non-constitutional error in criminal cases. See Tex. R. App. P.
44.2(b). Neither appellant nor the State bears the burden of demonstrating whether
appellant was harmed by the trial court’s error. See Johnson v. State, 43 S.W.3d 1,
5 (Tex. Crim. App. 2001). Rather, it is this Court’s responsibility to assess, from the
context of the error, whether the judgment requires reversal because the error affected
appellant’s substantial rights. See id. Error affects a substantial right when it has a
substantial and injurious effect or influence in determining the jury’s verdict.
Johnson, 43 S.W.3d at 3-4. In this case, we have positive eyewitness testimony from
the complainant identifying appellant as her assailant. That the complainant’s mother
saw a black car following her through the neighborhood and thought it might be
related to the robbery adds little to the evidence. Additionally, Kaur’s cousin, Singh, 
also testified that he had seen a black car circling the neigborhood and that he had
written down the license plate number, which was the same as the license on the car
appellant was driving when he was arrested. In light of the other evidence submitted
at trial, we cannot say that the admission of the alleged hearsay, if erroneous, affected
appellant’s substantial rights.
          We overrule point of error one.
SUFFICIENCY OF THE EVIDENCE
          In points of error two and three, appellant contends the evidence is legally and
factually insufficient to support the verdict because the complainant’s testimony
identifying him as her assailant is not credible. We review the legal sufficiency of the
evidence by viewing the evidence in the light most favorable to the verdict and
determining whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). The trier of fact is the sole judge of the weight and credibility of
the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus,
when performing a legal sufficiency review, we may not reevaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder.
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).
          In a factual sufficiency review, we view all of the evidence in a neutral light,
and we set the verdict aside only if “proof of guilt is so obviously weak as to
undermine confidence in the jury’s determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.” Vodochodsky v.
State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (internal quotation marks
omitted). In conducting such a review, we consider all of the evidence weighed by
the jury, comparing the evidence that tends to prove the existence of the elemental
fact in dispute to the evidence that tends to disprove it. Id. We may disagree with the
jury’s determination even if probative evidence exists to support the verdict, but we
should avoid substituting our judgment for that of the factfinder. Id. An opinion
addressing factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant’s complaint on appeal. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
          A person commits the offense of sexual assault if the person intentionally or
knowingly causes the penetration of the anus or female sexual organ of another
person by any means, without that person’s consent. Tex. Pen. Code Ann. §
22.011(a)(1)(A) (Vernon 2003 & Supp. 2005).
          Here, the evidence, viewed in the light most favorable to the verdict,
established the elements of the offense of sexual assault. The complainant testified
that as she was struggling with appellant, he sat down on her back, pulled down her
pajama bottoms, and squeezed her buttocks, before pushing two fingers into her anus.
The testimony of a victim, standing alone, is sufficient to support a conviction for
sexual assault. Villalon v. State, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990);
Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet.
ref’d). Moreover, as discussed, the jury is the sole judge of the credibility of the
witnesses at trial. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
Evidence is legally sufficient as long as it provides the requisite proof needed to
satisfy the elements of the offense charged. Bousquet v. State, 47 S.W.3d 131, 137
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). Accordingly, we hold that the
evidence was legally sufficient to sustain appellant’s conviction for the offense of
sexual assault.
          In support of his factual sufficiency argument, appellant reiterates that “the
complainant’s testimony incriminating the appellant was simply not credible.”
Appellant points out that Kaur could not identify the handgun found on appellant at
the time of his arrest, that she was never asked to identify the gloves found in
appellant’s pockets, and that she told the police dispatcher that her assailant was
approximately five feet four inches tall and weighed 120 pounds, when appellant is,
in fact, larger.
          Kaur testified that the gun appellant used was silver with an orange handle. 
When she was shown State’s Exhibit 22, the gun recovered from appellant’s car, Kaur
testified that she did not recognize it. Appellant contends that this inability to
recognize the gun recovered from appellant’s car undermines Kaur’s credibility, such
that the evidence is factually insufficient. We disagree. Kaur’s inability to recognize
the gun could simply mean that the gun recovered from appellant’s car 4 days after
the robbery was not the same gun he used during the robbery.
          Appellant also argues that Kaur’s identification of him was not credible
because she said that he was about five feet four inches tall and weighed about 120
pounds, when, actually appellant was larger. However, Kaur admitted that she was
not very good at estimating height and weight, and that when she was describing
appellant to the operator she actually said, “120, 190, 160, I don’t know,” and that she
was just “throwing numbers out there” because she was frustrated by her inability to
estimate his height and weight for the operator. 
          The evidence also showed that Kaur was in the house with appellant for
approximately 45 minutes, and that for much of the time she was only inches away
from appellant. Part of the time, appellant was wearing an orange bandana, but he
later pulled it down or it fell down, giving Kaur a clear view of his face. Appellant
positively identified appellant as her assailant in a photospread prepared by the
police. Appellant had a heavy accent, just as Kaur had described. When asked to
identify appellant at trial, Kaur pointed to appellant and said, “That’s actually
definitely him, yes.”
          Viewing the relevant evidence in a neutral light, favoring neither the State nor
appellant, and with appropriate deference to the jury’s credibility determinations, we
conclude that the evidence supporting the verdict is not too weak to support the jury’s
finding of guilt beyond a reasonable doubt and the weight of the evidence contrary 
to the verdict is not so strong that the State could not have met its burden of proof on
the issue of appellant’s identity as the perpetrator. Zuniga v. State, 144 S.W.2d 477,
484–85 (Tex. Crim. App. 2004). Accordingly, we hold that the evidence on the issue
of identity is factually sufficient to support appellant’s conviction for the offense of
aggravated sexual assault.
          We overrule points of error two and three.
PUNISHMENT ASSESSED OUTSIDE THE PROPER RANGE
          Appellant was indicted for sexual assault, with a separate paragraph alleging
use of a deadly weapon.


 Sexual assault carries a punishment of confinement
between two and 20 years. See Tex. Pen. Code Ann. §§ 12.33 & 22.011(f) (Vernon
2003 & Supp. 2005). 
          The jury charge at the guilt-innocence phase asked the jury to determine
whether appellant was guilty of sexual assault. The jury returned a guilty verdict. 
The jury charge also included a special issue question asking the jury to determine
whether appellant used or exhibited a deadly weapon “during the commission of the
offense for which he has been convicted or during the immediate flight therefrom.” 
The jury found that appellant had used a deadly weapon.
          During the charge conference on punishment, the prosecutor urged the trial
court to charge the jury on aggravated sexual assault—not sexual assault—based on
the affirmative deadly weapon finding. The following exchange took place:
[Prosecutor]: I didn’t catch this sexual assault. It says they made an
affirmative finding of a deadly weapon. That increases the punishment
range to a first-degree under the Code. And we’ve–in the punishment
range in the charge is two to 20.
 
[The Court]: Yeah. I recognized that.
 
[Prosecutor]: I just caught that, but they made that deadly weapon
finding and so under the Code, it increases it to a first-degree.
 
[Defense Counsel] I agree, but I didn’t catch it.
 
[The Court]: Yeah. Okay.

          (End of Charge Conference)
 
[The Court]: We’ve made a mistake in the charge. Let’s take the jury
out.
 
[The Court]: Okay. Allright. Ladies and gentlemen, I apologize. I’ll
give you a brief explanation. I had the punishment range for sexual –
because there was a special issue finding, it is aggravated sexual assault. 
So, the punishment range is different. But the punishment ranges for
aggravated sexual assault and aggravated robbery are the same. They’re
both first degrees. The punishment range I’ll read to you. And I’ve
already read everything else to you and I will not read it again. And
we’ll get right to argument afterwards.

          Afterwards, the jury was charged on aggravated sexual assault at the
punishment phase of trial and was instructed that the punishment range for aggravated
sexual assault was between five and 99 years. See Tex. Pen. Code Ann. §§ 12.32 &
22.0021(e) (Vernon 2003 & Supp. 2005). The jury assessed punishment at 30 years’
confinement.
          The judgment, however, indicates that appellant was convicted of 2nd degree
felony sexual assault, makes no affirmative finding that a deadly weapon was used,
yet sentences appellant to 30 years’ confinement.
          In his sixth point of error, appellant argues that the sentence is void because he
was sentenced outside the proper range of punishment for sexual assault. The State
responds that (1) appellant waived the alleged error because defense counsel did not
object to the aggravated sexual assault charge to the jury at the punishment charge
conference; (2) that the error is harmless because appellant was also sentenced to 30
years’ confinement on the aggravated robbery charge; and (3) that this Court should
reform the judgment to show that appellant was actually charged with and convicted
of aggravated sexual assault.
          We begin by noting that a sentence that is not within the statutory punishment
range for an offense is void, and no objection is required to preserve error. See ex
parte Seidel, 39 S.W.3d 221, 225 n.4 (Tex. Crim. App. 2001). Similarly, there is no
authority for holding such an error harmless. Therefore, the issue the Court must
decide is whether the judgment is void, i.e., whether the judgment imposed a
punishment outside the proper statutorily-prescribed range.
          To make this determination, we must decide whether a deadly weapon finding
in a sexual assault case is, as the State argues, a de facto conviction for aggravated
sexual assault. Therefore, we examine the elements necessary to prove a deadly
weapon special issue, and then determine whether those elements necessarily include
the same elements required to prove aggravated sexual assault. If a deadly weapon
enhancement can be proved without meeting the requirements necessary to prove
aggravated sexual assault, then the two things are not the same, and the jury was
erroneously allowed to consider the punishment range for aggravated sexual assault.
          Under article 42.12 § 3g(a)(2) of the Texas Code of Criminal Procedure, a
deadly weapon finding may be entered if “it is shown that a deadly weapon as defined
in Section 1.07, Penal Code, was used or exhibited during the commission of a felony
or during the immediate flight therefrom . . . .” Tex. Code Crim. Proc. Ann. art.
42.12, § 3g(a)(2) (Vernon Supp. 2005) (emphasis added).
          In contrast, the aggravated assault statute provides a sexual assault is
considered an aggravated sexual assault if the defendant “uses or exhibits a deadly
weapon in the course of the same criminal episode.” Tex. Pen. Code Ann. §
22.021(a)(2)(A)(iv) (Vernon 2003 & Supp. 2005). For purposes of the aggravated
sexual assault statute, a “criminal episode” begins when the attacker in any way
restricts the victim’s freedom of movement and it ends with the final release or escape
of the victim from the attacker’s control. Burns v. State, 728 S.W.2d 114, 116 (Tex.
App.—Houston 14th Dist. 1987, pet. ref’d).
          Although these two definitions are similar, they are not the same. For example, 
an affirmative deadly weapon finding may be made even if the defendant does not use
or display the weapon until after his victim has escaped or been released, and the
defendant is in “immediate flight” from the scene of the offense. In contrast, to be
convicted of aggravated assault, a defendant must use or exhibit the deadly weapon
while restricting the victim’s freedom—once the victim is released or escapes the
defendant, the criminal episode ends.
          Because a deadly weapon finding under article 42.12, § 3g(a)(2) is not
necessarily the same as using or exhibiting a deadly weapon under the aggravated
assault statute, the trial court erred by charging the jury that it could assess
defendant’s punishment as an aggravated sexual assault. Similarly, the trial court
erred in sentencing appellant to 30 years’ confinement because the proper range of
punishment for sexual assault is between two and 20 years. Appellant’s sentence was
outside the statutory range, and, therefore, was void. See ex parte Seidel, 39 S.W.2d
at 225.
          Accordingly, we sustain appellant’s sixth point of error.
          In points of error four and five, appellant argues that “assuming this Court finds
that the appellant was in fact convicted of aggravated sexual assault by the jury,
during the guilt or innocence phase of the trial, the issue remains as to whether the
evidence supports such a verdict.” Specifically, appellant contends that there is
legally and factually insufficient evidence to show that he used or exhibited a firearm
as a deadly weapon. Because we have held that appellant was not convicted of
aggravated sexual assault, we need not address points of error four and five, and
decline to do so.



CONCLUSION
          Having overruled appellant’s first, second, and third points of error, we affirm
his conviction. However, because we sustained appellant’s sixth point of error
regarding the proper range of punishment, we reverse the trial court’s judgment on
punishment and remand to the trial court for a new punishment hearing for the second
degree felony of sexual assault with a deadly weapon finding. See Tex. Code Crim.
Proc. Ann. art. 44.29(b) (Vernon Supp. 2005).
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.

Publish. Tex. R. App. P. 47.2(b).