

# NUMBER 13-23-00203-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**EDDIE MARIN,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                **Appellee.**

---

## ON APPEAL FROM THE 187TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant Eddie Marin was found guilty by a jury of possession of a controlled substance, namely methamphetamine, in an amount of one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102; 481.115(a), (c). The trial court imposed a sentence of two years' imprisonment, but

suspended the sentence and placed Marin on community supervision for two years. By two issues, Marin argues that the trial court abused its discretion when it (1) denied his motion to suppress evidence and (2) denied his request for a jury charge instruction. We affirm.

## I.    BACKGROUND[1]

At trial, Officer Nathan Bundy of the San Antonio Police Department (SAPD) testified that on February 25, 2022, he and Officer Franco Ruiz were patrolling a high crime area when they conducted a traffic stop of Marin for riding a bicycle in an oncoming lane of traffic. After Marin identified himself, Bundy asked him if he had any illegal substances, and Marin stated "No." Bundy then asked Marin for consent to search his backpack. When asked if Marin said anything, Bundy testified "I—I don't remember him responding verbally." According to Bundy, Marin "took off his backpack and opened it for me, placed it on the hood." Bundy then testified that his body-worn camera captured footage of the interaction and the State offered the footage into evidence. In response, Marin's counsel stated "Judge, I don't think we necessarily have objection to it, but I think this is going to be the crux of the case: whether or not suppression will be granted or not. Do we want to this this up outside the presence of the jury?"[2]

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] Marin filed a written motion to suppress prior to trial, which sought to suppress "[a]ll evidence obtained as a result of . . . illegal seizures . . . and searches, including . . . any physical evidence seized from the defendant[.]"

2

The trial court then held a hearing outside the presence of the jury. During the hearing, the trial court watched the body-worn camera footage, which was nineteen seconds in length. In the footage, Marin stood in front of Bundy's police unit and had a backpack on. Bundy and Ruiz stood a short distance on either side of Marin, near the police unit's headlights. This interaction occurred in broad daylight, in front of a gas station. Bundy asked Marin if he used narcotics and Marin responded "No." Bundy then asked if Marin had anything illegal on him and Marin responded "No." Bundy then asked Marin "Can I search your backpack and see if you got anything?", and in response, Marin took his backpack off, placed it on top of the police unit's hood, and began opening the backpack. Bundy then stopped Marin from fully opening the backpack, grabbed the backpack and placed it closer to himself on top of the hood. After watching the footage, the State continued asking Bundy questions about his search of Marin's backpack:

| [The State]: | So Officer Bundy[,] . . . he nonverbally consented you [sic] to search the bag. |
|---|---|
| [The Court]: | It is dumb. How—how did he nonverbally consent? |
| [The State]: | He took the bag off and opened it and handed it to Officer Bundy. |
| [The Court]: | How is that a nonverbal consent? How is non—how is that not—never mind. Finish—just finish your question. And don't lead the witness. |

Bundy then testified that he found a white crystalline substance he believed to be narcotics "[i]nside the cigarette case in his backpack." During cross-examination, the following exchange occurred:

| [Marin's Counsel]: | Officer, you said that you were patrolling a high-crime area; is that correct? |
|---|---|

3

| | |
|---|---|
| [Bundy]: | Yes, sir. |
| [Marin's Counsel]: | Are you familiar with the term "Terry stop" or "Terry frisk"?[3] |
| [Bundy]: | Yes, sir. |
| [Marin's Counsel]: | All right. Would you say that this stop didn't [sic] start as a Terry frisk? You were searching for weapons on him? |
| [Bundy]: | Yes, sir. |
| [Marin's Counsel]: | Okay. He—you asked if you can search the bag. He opens the bag, and he places it down. If this is a Terry frisk, what weapons did you expect to find inside the cigarette case? |
| [Bundy]: | At that point, I assumed consent. |
| [Marin's Counsel]: | Did he ever say, "Yes, you can search my bag"? |
| [Bundy]: | No, sir. |
| [Marin's Counsel]: | He never gave affirmative consent. |
| [Bundy]: | Affirmative, not verbal, no, sir. |
| [Marin's Counsel]: | Okay. |
| [Marin's Counsel]: | Your Honor, based on that, we would ask to exclude the— |
| [The Court]: | Sustained. The—the search is no good. He needed to get consent. He didn't. He's not searching for weapons. He's not patting him down. He didn't find it in a pat down. You're not going to find any weapons in a cigarette case. |

---

[3] *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) (providing that an officer may detain an individual to conduct "a reasonable search for weapons . . . regardless of whether he has probable cause to arrest the individual for a crime," if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger").

4

| [The State]: | Any—Judge, the only thing, just for the record, I would just argue is that— |
|---|---|
| [The Court]: | Do you have some case law? |
| [The State]: | I—I can find some, sir. |
| [The Court]: | You better find it right now. Step down. |
| [The State]: | Yes, sir. |
| [The Court]: | Right now. I give you 15 minutes, so get—get going. |

The record indicates that a recess was taken and a discussion occurred off the record. After recess, the jury returned, and the footage was admitted into evidence without objection. Bundy continued his testimony and stated that he asked Marin if he could search his bag, and that Marin, in response, "took off his backpack, opened it, and placed it on the hood of my car." Thereafter, the following exchange occurred:

| [The State]: | Okay. And what did you take that to mean? |
|---|---|
| [Bundy]: | To mean that he'd— |
| [Marin's Counsel]: | Objection; speculation. |
| [The Court]: | Sustained. |

Bundy then again testified that he found a "white crystal-like substance" "inside the cigarette case" in Marin's backpack, which he believed to be narcotics. Marin did not object to this testimony. Bundy stated that he then "detained" Marin and indicated Marin was under arrest until he could do a "presumptive test."

Ruiz testified that he secured the "narcotics" found in Marin's backpack and placed it in the property room of SAPD. Marin did not object to this testimony. Next, Jolie Imler, a crime scene investigator, testified that she was called out to the scene and conducted

5

a field test of the substance found in Marin's backpack, and the substance tested positive for methamphetamine. Marin did not object to this testimony. Subsequently, Mark Florence, a forensic scientist with Bexar County, testified that he also tested the substances found in Marin's backpack and concluded they were positive for methamphetamine and weighed 1.888 grams. Marin did not object to this testimony. After Florence testified, the State offered the methamphetamine that was found in Marin's backpack into evidence, and it was admitted by the trial court without objection.

After both parties rested, the trial court asked the parties, outside the presence of the jury, if there were any objections or additions to the jury charge. Marin requested that the trial court include a "38.23(a) instruction to the jury to disregard unlawfully obtained evidence, specifically challenging the questionability of the stop and the search of the bag." The trial court denied Marin's request. After hearing closing arguments from the parties, the jury found Marin guilty as charged. The trial court sentenced Marin to two years' imprisonment but suspended the sentence and placed Marin on community supervision for a term of two years. This appeal followed.

## II.    SUPPRESSION

In his first issue, Marin argues that the trial court erred when it denied his request for the suppression of evidence he claims were the fruits of a unreasonable search in violation of the Fourth Amendment of the U.S. Constitution and Article 1, § 9 of the Texas Constitution.

### A.    Standard of Review & Applicable Law

A motion to suppress is nothing more than a specialized objection to the admission

of evidence. *See Martinez v. State*, 17 S.W.3d 677, 682–83 (Tex. Crim. App. 2000). We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of the weight to be given their testimony. *Id.* at 190. We therefore afford almost complete deference to the trial court's determinations of historical facts. *Id.* But we review de novo the legal significance of the facts found by the trial court. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).

When, as here, the trial court does not make explicit findings of fact and none are requested by the losing party, "we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citing *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007)). We sustain the trial court's decision on the motion if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

Both the Fourth Amendment and article one, section nine of the Texas Constitution guarantee individuals the right to be free from unreasonable seizures or searches. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). Generally, warrantless searches and seizures are presumed unreasonable; thus, the State must establish that any search or seizure was justified

7

under an exception to the warrant requirement. *See Kothe v. State*, 152 S.W.3d 54, 59 n.10 (Tex. Crim. App. 2004) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)). Voluntary consent to search is an established exception to the warrant requirement. *State v. Villareal*, 475 S.W.3d 784, 796 (Tex. Crim. App. 2014) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The validity of a consent to search is a question of fact to be determined from all the circumstances. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

"A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent." *Id.* The standard for measuring the scope of consent under the Fourth Amendment is that of "objective" reasonableness—"what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 459. Courts review the totality of circumstances from the point of view of the objectively reasonable person, "without regard for the subjective thoughts or intents of either the officer or the citizen." *See id.*

Consent to a warrantless search must be voluntary. *Id.* Consent may not be coerced by explicit or implicit means, by implied threat, or by covert force. *Id.* The voluntariness of a person's consent is also a question of fact that is determined by analyzing all of the circumstances of a particular situation. *Id.* The ultimate question is whether the person's "'will ha[s] been overborne and his capacity for self-determination critically impaired,'" such that his consent to search must have been involuntary. *Id.* (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)). The trial court may consider

8

numerous factors in the analysis. *Id.* at 460.

Due to the fact-intensive nature of consent issues, we must accept a trial court's finding of voluntary consent on appeal "unless it is clearly erroneous." *Meekins*, 340 S.W.3d at 460.

## B. Discussion

As demonstrated above, the trial court initially ruled that the search of Marin's backpack was "no good" and without consent. Nothing in the record explicitly indicates that the trial court changed its ruling. However, because Bundy continued testifying before the jury regarding his search of Marin's backpack after the trial court's initial ruling, we assume without deciding that the trial court implicitly changed its initial ruling regarding the legality of the search of Marin's backpack and denied Marin's suppression motion. *See Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995) ("A trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling."); *see also Leal v. State*, 468 S.W.3d 647, 650 (Tex. App.—Houston [14th Dist.], 2015 pet, ref'd) (finding the trial court implicitly overruled the defendant's motion to suppress evidence of a warrantless blood draw because the court permitted the State to present evidence of the defendant's blood alcohol content).

To preserve error about the illegal seizure of evidence, a defendant must either file a motion to suppress and obtain a ruling on the motion or timely object when the State offers the evidence at trial. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1); *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984); *Ratliff v. State*, 320 S.W.3d 857, 860 (Tex. App.—Fort Worth 2010, pet. ref'd). When a trial court does not rule on a motion to

suppress, but carries it with the trial, the defendant must object each time any evidence subject to the motion is offered in order to preserve error. *Palacios v. State*, 319 S.W.3d 68, 72 (Tex. App.—San Antonio 2010, pet. ref'd). In that case, the motion to suppress must be urged when the ground for objection becomes apparent or else the error is waived. *Coleman v. State*, 113 S.W.3d 496, 500 (Tex. App.—Houston [1st Dist.] 2003), *aff'd*, 145 S.W.3d 649 (Tex. Crim. App. 2004). The ground for objection generally becomes apparent when the item is offered into evidence. *Id.* However, the complaining party must object "before substantial testimony is given regarding the alleged illegally seized item."[4] *See id.* (emphasis added) (holding that defendant waived error in admission of evidence of narcotics seized from his home where he waited until after officers and crime laboratory chemist had testified extensively about seized items); *see also Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. 1980) (concluding that defendant forfeited claim that trial court should have suppressed physical evidence of narcotics because defendant had not objected at trial to officer's testimony about finding narcotics); *Laurant v. State*, 926 S.W.2d 782, 783 (Tex. App.—Houston [1st Dist.] 1996, writ ref'd).

In this case, the trial court did not rule on Marin's motion to suppress prior to trial. Therefore, Marin was required to object each time any evidence subject to the motion was offered in order to preserve error. *See Palacios*, 319 S.W.3d at 72. When Bundy

---

[4] Noncompliance with this rule is excused when the trial court makes specific pretrial comments that "essentially [direct the defendant] to wait until all the evidence [is] presented" before seeking a ruling from the court on the motion to suppress and has told the defendant that it would "make no ruling until all the testimony had been presented." *Garza v. State*, 126 S.W.3d 79, 84–85 (Tex. Crim. App. 2004). Here, the trial court made no such comments.

10

testified to the jury after the off-record discussion following the trial court's initial ruling, Marin did not object to Bundy's testimony regarding his search of Marin's backpack and the "white crystal-like substance" inside the cigarette case. Likewise, Marin did not object to Imler and Florence's testimony that the substance tested positive for methamphetamine. Marin also did not object to Florence's testimony regarding the weight of the methamphetamine, or to the admission of the physical evidence of the methamphetamine. Thus, the record demonstrates that Marin failed to object each time the complained-of evidence was offered in order to preserve error and has waived this issue. *See id.*

Moreover, even if Marin had properly preserved this issue for review, we conclude that Marin's first issue lacks merit. Marin argues that "[w]hile [he] did reluctantly take his back-pack off and place it on the hood of the patrol car and opened it himself to take items out, it is obvious he was not relinquishing control over it or any items in the back-pack." We disagree. As discussed above, consent need not be explicit but may be communicated in a variety of indirect ways, including one's actions. *See Meekins*, 340 S.W.3d at 458; *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (holding that a hand gesture made towards an officer was sufficient consent for the officer to enter defendant's home); *Sullivan v. State*, 622 S.W.3d 415, 418–19 (Tex. App.—Waco 2020, pet. ref'd) (holding that a defendant implicitly consented to a search of his vehicle when he moved away from the vehicle's door and toward the rear of the vehicle after an officer asked the defendant if he could "search the vehicle, and if so, if [the defendant] could move to the rear of the vehicle"); *see also Tran v. State*, No. 01-18-00623-CR, 2019 WL

11

5243102, at *1–3 (Tex. App.—Houston [1st Dist.] Oct. 17, 2019, no pet.) (mem. op., not designated for publication) (holding that a defendant implicitly consented to a search of the vehicle when he removed his seatbelt and exited his car after an officer asked if he could search the vehicle). Here, the trial court could have found, despite its initial misgivings of the existence of non-verbal consent on the record, that Marin impliedly consented to the search of his backpack through his actions—that is, by immediately removing his backpack from his person, placing it on the hood of Bundy's patrol unit, and partially opening it. Marin's actions in response to Bundy's inquiry of whether he could search Marin's backpack constituted more than mere acquiescence to a claim of lawful authority. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) ("[C]onsent is not established by 'showing no more than acquiescence to a claim of lawful authority.'") (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

Marin further argues that "[i]t was only when Officer Bundy reached over [him] and physically and forcibly took control of the backpack that [he] lost control of his personal property." The footage shows that as Marin began opening the backpack, Bundy stopped him, grabbed the backpack, and moved it closer to him on top of the hood of the police unit. According to Marin, the footage "shows actual physical coercion by Bundy." We find this argument unavailing because by the time Marin began opening his backpack, he had already implicitly consented to the search. *See Gallups*, 151 S.W.3d at 201; *Sullivan*, 622 S.W.3d at 418–19. Marin does not explain how Bundy's subsequent actions in grabbing the backpack negated his prior implied consent. Marin points to no other evidence in the record of coercion that could have rendered his implied consent involuntary, and we have

12

found none. The language of Bundy's request—"Can I search your backpack and see if you got anything?"—was neither coercive nor a persistent and protracted show of authority. Thus, there was sufficient evidence for the trial court to have found that Marin was not coerced such that his consent to search was involuntary, and such a finding was not clearly erroneous. *See Meekins*, 340 S.W.3d at 459–60.

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we cannot say that the trial court abused its discretion by implicitly denying Marin's suppression motion. We overrule Marin's first issue.

### III.     Jury Charge

In his second issue, Marin argues that the trial court abused its discretion when it denied his request for an instruction in the jury charge pursuant to Article 38.23 of the Texas Code of Criminal Procedure.

### A.     Standard of Review & Applicable Law

Trial courts are obligated to instruct the jury on the law applicable to the case. *Williams v. State*, 662 S.W.3d 452, 460 (Tex. Crim. App. 2021); *see* Tex. Code Crim. Proc. Ann. art. 36.14. In evaluating alleged jury charge error, we first determine whether the trial court erred in refusing the requested instruction. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). If we find error, we then engage in a harm analysis. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). Where, as here, the defendant preserved the alleged error, should we find error then we must reverse if we find "some harm."

*Jordan*, 593 S.W.3d at 346 ("'Some harm' means actual harm and not merely a theoretical complaint."); *Almanza*, 686 S.W.2d at 171.

Article 38.23 is a statutory exclusionary rule which exists to prevent illegally obtained evidence from being used at trial. *See Holder v. State*, 639 S.W.3d 704, 707 (Tex. Crim. App. 2022); *Day v. State*, 614 S.W.3d 121, 128 (Tex. Crim. App. 2020) ("The text of Article 38.23 addresses the admissibility of evidence at trial when the law has been violated."). When evidence presented at trial directly pertains to a contested fact issue and raises a concern of whether it was legally obtained, the jury shall be instructed that "if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of [Article 38.23], then and in such event, the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

An Article 38.23 jury instruction is mandatory only when there is a factual dispute regarding the legality of the search. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Brooks v. State*, 642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982); *Malone v. State*, 163 S.W.3d 785, 802 (Tex. App.—Texarkana 2005, pet. ref'd). In order to be entitled to such an instruction, "the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible." *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). "Where the issue raised by the evidence at trial does *not* involve controverted historical facts, but only the proper application of the law to

14

undisputed facts, that issue is properly left to the determination of the trial court," and no Article 38.23 jury charge instruction is required. *Id.*

## B.    Discussion

In his brief, Marin argues that he was entitled to an Article 38.23 instruction because the footage from Bundy's body-worn camera was "some evidence pointing in the opposite direction of the State's assertion that the search of the backpack was pursuant to lawful consent and thus legal." Marin further argues that "[w]hile the jury heard from Bundy that he thought he had consent to search, the jury was able to see the video as to how the search actually went down, with Bundy grabbing the backpack from [him]," and that "the video affirmatively contests Bundy's testimony that he had [Marin's] consent to search his belongings." Marin then concludes that "the contested fact, consent, was certainly material to the lawfulness of the search."

As detailed above, Bundy testified that when he asked for consent to search Marin's backpack, he did not remember whether Marin responded verbally, but stated that Marin "took off his backpack and opened it for me, placed it on the hood." The body-worn camera footage showed that when Bundy asked Marin "Can I search your backpack and see if you got anything?", Marin did not verbally answer but took his backpack off, placed it on top of the police unit's hood, and began opening the backpack. Thus, the footage did not conflict with Bundy's testimony regarding what happened after he asked for Marin's consent. *See id.* (holding that in order to be entitled to an Article 38.23 instruction, "the defendant must show," among other things, "that . . . an issue of historical fact was raised in front of the jury").

15

While the footage depicts Bundy grabbing Marin's backpack, he only did so *after* Marin had already taken off his backpack, placed it on the police unit's hood, and began opening it—in other words, after Marin had impliedly consented. Marin does not explain how Bundy grabbing his backpack creates a fact issue when Marin impliedly consented to the search *before* Bundy grabbed it. *See Meekins*, 340 S.W.3d at 458 ("A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent."). The record simply does not contain any affirmative evidence or testimony demonstrating that Marin did not provide consent—in other words, there was no dispute of historical facts relative to whether Marin consented to the search of his backpack. *See Robinson*, 377 S.W.3d at 719 (holding that in order to be entitled to an Article 38.23 instruction, "the defendant must show", among other things, "that . . . [a historical] fact was contested by affirmative evidence at trial").

Furthermore, nothing in the record demonstrates that Marin was threatened or compelled to provide consent. Thus, there was no dispute of historical facts relative to the voluntariness of Marin's consent. *See id.*; *Carmouche*, 10 S.W.3d at 331 (explaining that consent is involuntary if it is "coerced, by explicit or implicit means, by implied threat or covert force" (quoting *Schneckloth*, 412 U.S. at 228)). Because Marin was not entitled to his requested Article 38.23 instruction, we conclude that the trial court did not err in denying Marin's request for the instruction's inclusion in the jury charge. We overrule Marin's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
11th day of July, 2024.

17